# Buchanan *versus* Hazzard and Wife.

1. Where a married woman executes a deed or lease, under seal, of her land, in which her husband does not join, it is absolutely void and cannot be made valid by evidence of the husband's assent thereto. Nor can the married woman be estopped by any subsequent act or ratification. Nothing but a new deed, duly executed and acknowledged, will avail.

2. Where a husband and wife are in possession of land they may maintain ejectment against parties in possession of a part thereof when said parties claim the right to operate oil wells under such an invalid lease executed by the wife.

June 21st 1880. Before SHARSWOOD, C. J., MERCUR, GORDON TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas of *McKean county :* Of May Term 1880, No. 50.

Ejectment by Henry E. Hazzard and Mary A. Hazzard, for the use of said Mary, against Russell Buchanan and Jefferson Buchanan, for a tract of land.

At the trial, before Williams, P. J., it appeared that the title to the property in dispute was in Mrs. Hazzard, but the defendants claimed under her the right of possession for oil purposes. The facts upon which this claim was founded were as follows : On the 7th of June 1877, Mrs. Hazzard executed an oil lease, wherein it was stipulated that in consideration of one-fourth of the oil to be produced, and of mutual covenants, she granted and let the premises in dispute to Buchanan Bros., for the purpose of boring for and pumping oil, &c., for the term of twelve years, the lessor to have the use and enjoyment of the premises for the purposes of tillage, except such portion as might be necessary in the mining and boring and a right of way thereto. The work was also to begin within twenty-five days, and if the first well should produce ten barrels a second was to be drilled. The lease was under seal and signed by Mrs. Hazzard and the Buchanan Bros., but was not signed by Mrs. Hazzard's husband. It was acknowledged by Mrs. Hazzard before a notary public, who certified in due form to a separate acknowledgment by her.

The defendants made the following offer of evidence :—

" The lease from Mary A. Hazzard to the Buchanan Brothers, dated 7th of June 1877, for the premises in controversy, to be followed by an instrument of sale, Mary A. Hazzard to Buchanan Brothers, dated 11th of August 1877, conveying one-eighth of her

right to the oil produced upon the land in controversy; to be followed further by an instrument dated 9th July 1877, Mary H. Hazzard and husband to Andrew and P. Balton, which was duly executed according to the laws of Pennsylvania for passing title of land by a married woman, in which she sells for the consideration of $400, one-eighth part of the oil produced by a well then being drilled on the land by Buchanan Brothers; to be followed further by evidence that the defendants went into possession under the instrument referred to, and drilled two wells and produced oil therefrom, and delivered to Hazzard and wife their share of the royalty; that the plaintiffs resided upon the land at the time the wells were drilled, had knowledge of the labor and money expended in producing the oil, and aided and encouraged the defendants in this production; and that the plaintiffs resided on the land at the time of the commencement of this suit; that the well referred to in the contract of 9th of August 1877, was the one being drilled by Buchanan Brothers under the lease of 7th of June 1877; that at the time of the execution of the instruments referred to the husband of Mary A. Hazzard was present and participated; that the sum of $50 in money was paid to Mrs. Hazzard on the execution of the instrument of the 7th of June; that the sum of $600 was paid to her, her husband being present and consenting, as the consideration of the instrument executed by her and dated the 11th of August 1877; that the defendants have never been in possession of the land except for the purpose of producing oil according to the terms of the lease executed to them; that the plaintiffs have not refunded nor offered to refund the money paid as above stated, nor done other acts to protect the defendants against the loss which would be occasioned by their outlay."

The plaintiffs objected on the ground that the lease was executed by a married woman, and as her husband had not joined therein, it was void and passed no right or interest to the defendants. Objection sustained and evidence rejected. The defendants then asked the court to charge the jury, "that if they find the plaintiffs were in possession of the premises described in the writ at the time of the commencement of this suit, they cannot recover in ejectment," to which the court answered: "The principle stated in the point is well settled, but the evidence in the case shows that a portion of this land is in actual occupancy of the defendants, they having structures of some permanence upon it, which were occupied by them. We think, therefore, this case is not within the rule which the point invokes."·

The court then directed a verdict for the plaintiffs, which was rendered accordingly, and after judgment thereon defendants took this writ and assigned for error the refusal of the above offer of evidence, the answer to the point and the direction to the jury to find for plaintiffs.

14 NORRIS—16

*Hamlin & Son* and *A. G. Olmstead*, for plaintiffs in error.—
The married woman `had put the defendants on the land, and
induced them to drill oil wells. Whether they went on with or
without a then fixed legal title, we submit, makes no difference for
the purpose of this position. Oil was being produced and flowed
into the tanks. As it was produced it became a chattel. The
right to the royalty was not land; it was a chose in action. By
an instrument dated 11th of August 1877, in consideration of
$600, she sold to the defendants the one-eighth part of her "right,
title and interest," and describing it as being the one-fourth royalty.
It is submitted that she had authority to sell, and did make a valid
sale of this, together with the right to go upon her land to get it,
by her contract of August 11th 1877. Though her husband did
not unite with her in signing the contract of sale of the royalty,
yet the evidence shows that he was present and consenting, and by
such consent he is clearly estopped.

The plaintiffs in error especially rely on the effect of the con-
tract of 9th of July 1877, which formed a part of the offer rejected.
It was executed by Mary A. Hazzard and her husband, and
acknowledged in due form of law to convey title to land owned by
a married woman. By its provisions Mrs. Hazzard and her hus-
band, in consideration of the sum of $400, sold to Baltons the one-
eighth part (which was the one-half of the one-fourth royalty under
the lease referred to), of the oil produced by a well being drilled
on the land of Mrs. Hazzard, and under the lease to Buchanan
Brothers. It makes especial reference to the lease of Mrs. Hazzard
to Buchanan Brothers, for the terms and conditions of the sale,
and adopts it; by it she sold the fruits of the lease. We sub-
mit that its effect is to affirm by a valid instrument, and in a
legal manner, the former instrument which was voidable at the
pleasure of the married woman: Shaw *v.* Anderson, 7 S. & R. 43;
Fulton *v.* Moore, 1 Casey 468; Fryer *v.* Rishell, 3 Norris 521;
Vance *v.* Nogle, 20 P. F. Smith 176; Freeman *v.* Welsh, 7 W.
N. C. 296; Brown *v.* Bennett, 25 P. F. Smith 420.

Corley *v.* Pentz, 26 P. F. Smith 57, determines the right of one
in the actual possession of land to maintain an ejectment for it
against an intruder. There the defendant entered for the purpose
of cutting and carrying away the timber; here, for the purpose of
cutting the rock and removing the oil. In either case, such entry,
without right, was a trespass, and by such form of action the
plaintiffs have their remedy. The court withdrew the case from the
jury, and directed a verdict for the land described in the writ,
whereas the evidence showed the defendants had no character of
possession to but a small portion of it, and this was not defined in
the verdict and judgment following it. If the plaintiffs issue *habere
facias possessionem*, it must issue for the land for which the judg-
ment was entered; but the plaintiffs were in possession of it, and it

[Buchanan v. Hazzard.]

would oust them. It would be the duty of the sheriff to deliver the land.

*H. King*, for defendants in error.—The lease was void, not voidable, and, therefore, incapable of ratification: Glidden *v.* Strupler, 2 P. F. Smith 400; Dunham *v.* Wright, 3 Id. 167; Rumfelt *v.* Clemens, 10 Wright 455. The evidence shows, as stated by the court, the defendants below were in exclusive possession of at least portions of the premises, by the erection of buildings or structures, and, therefore, the rule as stated in Corley *v.* Pentz, 26 P. F. Smith 57, does not apply.

The judgment of the Supreme Court was entered, October 4th 1880,

PER CURIAM.—The learned court below were clearly right in rejecting the evidence offered by the plaintiffs in error and complained of in the first assignment. Nothing is better settled than that a deed by a married woman without joining her husband is absolutely void; and evidence of the husband's verbal assent could not help the matter : Trimmer *v.* Heagy, 4 Harris 487. Nor can she be estopped by any subsequent act or ratification : Glidden *v.* Strupler, 2 P. F. Smith 400. Nothing but a new deed, duly executed and acknowledged, could avail. The subsequent deed to Batton could at most only be effectual to convey one-eighth of the royalty of the well. It could not, consistently with the doctrine of these cases, ratify and confirm the previous void lease to the Buchanans. There was no error in the answer to the defendant's point, nor in the direction to find a verdict for the plaintiff.

Judgment affirmed.