## KEMILIA HOLT *v.* KAAUKAI.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 20, 1898.     DECIDED SEPTEMBER 26, 1898.

JUDD, C.J., FREAR AND WHITING, JJ.

Under Section 1287 of the Civil Code, now repealed, to enable a wife to
  convey her lands to a third person, her husband must consent in
  writing.

OPINION OF THE COURT BY JUDD, C.J., (Frear, J., dissenting).

This is ejectment for a portion of the land covered by Royal
Patent No. 1774, and Royal Patent 6515, (L. C. A. 7832) at
Hamakua, Hawaii. Defendant disclaimed as to three-fourths
of the land and claimed title by inheritance as to the other
fourth. The Circuit Court, jury waived, found for the plain-
tiff as to the three-fourths disclaimed and for the defendant as
to the other fourth. Plaintiff brings the case to this Court on
Exceptions. The land at one time belonged to one Keaweopala,
and upon his death it descended to his son Kaopua and daughter
Maiau, who together afterwards, on the 13th November, 1876,
executed a deed of it to the plaintiff Kemilia and her sister Rode,
daughters of Kaopua. Kemilia claims under this deed and a
release from Rode.

When this deed was executed Kaopua had a wife, Honuaiwa,
and Maiau had a husband the defendant Kaaukai, neither of
whom joined in or gave any written consent to the deed.

Maiau afterwards died, leaving as her only heirs her brother Kaopua and her husband Kaaukai, defendant. Evidence was offered by plaintiff to show that Kaaukai assented orally to his wife's conveyance, but it was ruled inadmissible by the Court, to which ruling exceptions were taken. If the wife's deed were void for want of the husband's joinder or written consent, he would upon her death have inherited one-half of her interest, that is, one-fourth of the whole land; and the only question submitted on the exceptions is whether under the Statutes then in force a wife's conveyance of her own land was valid if made with the oral consent of her husband.

Section 1287 of the Civil Code, in force at the time of the execution of the deed, provided that "The wife  *  *  * shall be deemed for all civil purposes to be merged in her husband, and civilly dead. She shall not, without his consent, unless stipulated by anterior contract, have legal power to make contracts, or to alienate and dispose of property" except under certain circumstances not involved in this case. By the previous Section, 1286, the husband was responsible for the debts of his wife and was entitled to the income of her real estate which he could lease with her written consent, for a term not to exceed that of his natural life.

If we were called upon to construe this Statute immediately upon its enactment it might be open to us to hold that as the Legislature has not prescribed how the husband's consent was to be made, it might be either written or oral.

This Statute Section 1287 was first enacted in 1846 (see Vol. 1, page 59, Laws of 1846) and re-enacted in the same language in the Civil Code of 1859.

Four years before the conveyance in question was made Chief Justice Allen held that a wife could not convey her own lands to her husband and added "neither can a wife convey her own lands to a stranger unless her husband joins in the conveyance." *Cummins v. Wond*, 6 Haw. 69. Decided in 1872.

In 1881 in *Nawelu v. Auld, id*, 297, it was held by a Jus-

tice of this Court that as the wife cannot without her husband's consent make a contract or alienate or dispose of her property, her contracts and conveyances to which her husband does not consent by joining in their execution, are void and convey nothing. The Justice from his familiarity with the rulings of his associates declares that "this principle has been frequently laid down by different judges of this court."

In these reported cases the Justices make no distinction between the husband's joining in the wife's deed and "consenting" to it; thus assuming that the husband's joinder would be his method of assenting to it. We agree to this proposition. And we draw the inference that as a husband cannot join in the written deed without his name appearing in it, the court meant that his consent must be in writing when it said that "joining" in the deed was his "consent."

Since these decisions the public has acted upon them and real property has passed by descent in accordance with these principles. Conveyances of real estate belonging to a married woman have been made generally on the principle that in order to the validity of a wife's deed of her land the husband's consent must be evidenced by some writing.

Where the Statute does not say that an oral consent of the husband may be proved to validate such a deed and there is good reason for holding that the consent must be in writing we should hesitate to hold what would be destructive of many valuable titles in this country. To allow oral evidence of an act (the husband's consent) which would validate an otherwise void deed, leaving it in the uncertain memory of fallible and possibly interested witnesses would be within the spirit of the Statute of Frauds enacted for the very purpose of preventing frauds and perjuries perpetrated orally.

*Clague v. Washburn*, 42 Minn. 271, is to the contrary. There it was held that "Inasmuch as the mere consent of the husband to his wife's act does not create or pass any estate, nor affect any estate or interest he may have in the land and her separate con-

veyance could only operate on her own estate or interest such consent could hardly come within the terms of the Statute last referred to." (Statute of Frauds). But in the State of Minnesota, married women's personal and real estate owned by her before marriage or acquired during marriage, continued upon her marriage to be her estate to the same extent as it was before her marriage. Her husband had no right to the rents. But in our case the husband had a right to the income from his wife's land and he therefore had an estate therein and her alienation of the land would deprive him of this. His consent to the conveyance should be in writing. The wife's deed must by the Statute of Frauds be in writing. She is civilly dead and cannot contract. Her husband's consent vitalizes her and gives her power to contract. It therefore should appear on her deed, or by some other writing, that her deed is not void and that she is thus made capable of contracting.

The case before us is a good example of the mischiefs of holding that such consent may be proved orally. The husband here says he never knew of or consented to the deed. Two witnesses, after a lapse of twenty-two years swear, that he did consent orally. We deem it unnecessary to discuss in detail the correctness of the statement often made in this court that Sections 1286 and 1287 were substantially the common law upon the subject of marital rights affecting property.

We hold that the Circuit Judge was right in excluding oral evidence of the husband's consent to his wife's deed and overrule the exceptions.

*Kinney & Ballou* for plaintiff.

*J. T. De Bolt* for defendant.

OPINION OF FREAR, J.

I respectfully dissent. Section 1287 of the Civil Code provided that "The wife, * * * shall be deemed for all civil purposes, to be merged in her husband, and civilly dead. She shall not, *without his consent*, unless otherwise stipulated

by anterior contract, have legal power to make contracts, or to alienate and dispose of property," except under certain circumstances not involved in this case. The question is, should the court read into the statute the word "written" before "consent" or substitute "joinder" for "consent." What was the intention of the Legislature? Looking to the statute alone, and without reference to the law elsewhere which the Legislature may have had in mind, the presumption is that the Legislature intended just what it said, "consent," without qualification, and that if it had meant "written consent" or "joinder" it would have said so. That the Legislature would have inserted the word "written" if it meant that the consent should be expressed in that manner, is further shown in this instance by the expressions actually used in other sections closely related to the one in question by proximity or subject matter. For instance, in the preceding section which sets forth the husband's relations to the wife's property, it is expressly provided, after giving him absolute control of her personal property, that "he may, with her *written* consent, rent or otherwise dispose of" her real property "for any term not exceeding the term of his natural life;" and the Married Woman's Act of 1888, which expressly repealed these sections of the Code and permitted a married woman to manage and dispose of her property, real and personal, in the same manner as if she were sole, contained the proviso, "that no sale or mortgage of her real estate shall be valid without the *written* consent of her husband;" and in Section 1291 of the Code which follows closely after the section in question, it is provided that, "when a male under twenty years of age, or female under eighteen years of age, is to be married, the *consent* of the parent, guardian or other person   *   *   *   shall be first obtained." It is obvious that the Legislature meant merely "consent" and not "written consent" in Section 1291; it also expressly said "written consent" where it meant that in Section 1286 and in the Act of 1888. The inference is strong that it meant what it said, merely "consent," in Section 1287, and that it did not there omit the word "written" inadvertently. It will be noticed that this sec-

ti-n (1287) refers to both real and personal property. If "written" consent were necessary for the disposition of real property it would be equally necessary for the disposition of personal property. There is nothing to indicate that the word "consent" should be construed differently with respect to different kinds of property. This Section also relates to the power to make contracts as well as the power to dispose of property, and the contracts which the wife may make are not restricted to those that are required to be in writing. This also tends to show that the Legislature did not have in mind "written" consent or joinder. The Legislature apparently had in mind the fact of consent rather than the manner in which it should be expressed.

But it is argued that Sections 1286 and 1287 of the Code are virtually enactments of the common law on this subject and consequently should be construed as the common law, on the supposition that the Legislature must have so intended. At common law, of course, a married woman's deed made without the consent of her husband was void. It is no doubt a sound principle, and one often followed by this Court in construing these very sections of the Code, that where the Legislature adopts the common law it should be taken to intend that the Statute should be construed as the common law. But is this principle applicable to the present case? Sections 1286 and 1287, it is true, follow the common law in most respects, but it is equally true that they depart from it in several respects, and, in so far as they do depart from it, not only is this an indication that there was an intention to depart from it but there would also be a presumption that the Legislature did not intend to depart further from the pre-existing Hawaiian common law than was shown by the express terms of the Statute. Thus, the first sentence of Section 1287 states the common law, but this is immediately qualified by the second sentence, which is not the common law. The inference is that the Legislature did not intend to adopt the common law on this subject in its entirety. Again, Section 1287 as a whole is a departure from the pre-existing Hawaiian common law which in the main placed husband and wife on the same,

and each on an independent, footing with regard to their property. The inference is that the Legislature did not intend to modify the law further than was expressed. That the second sentence of Section 1287 does not follow the common law is clear. At common law the wife could dispose of her real estate only by fine or common recovery, and not at all by deed, whether with or without her husband's consent, oral or written, or even if he joined in the deed with her. It is true, however, that in some of the American States a deed was regarded as the equivalent of a fine or common recovery and the courts held that by American common law a joint deed by husband and wife was valid, but even granting that this American law as distinguished from the English common law was in the minds of the Legislature, yet they departed from this also, for they provided merely for *consent*, whether written or oral need not now be considered, and not for *joinder*. That even written consent is different from joinder is manifest. Under statutes which provide expressly for "written" consent, it is held elsewhere that joinder is not necessary. *Child v. Sampson*, 117 Mass. 63; *Wing v. Schramm*, 79 N. Y. 619; see also *Ingoldsby v. Juan*, 12 Cal. 564; *Dentzel v. Waldie*, 30 Cal. 139. These and other cases show that courts elsewhere have given effect to the particular wording of statutes where they have not strictly followed the common law. See also *Strickland v. Bartlett*, 51 Me. 355. Most decisions upon this subject elsewhere are under statutes which provide either expressly or by necessary implication for *written* consent or for joinder, but at least one decision was rendered under a statute which, like ours, provided merely for "consent." The statute provided that the wife should not convey "without the consent of her husband." The court held that the consent might be either oral or in writing, express or implied. *Clague v. Washburn*, 42 Minn. 371. The Pennsylvania cases cited *contra* (*Buchanan v. Hazzard*, 95 Pa. 240 and *Dunham v. Wright*, 53 Pa. 167) are not in point on account of the difference in the wording of the statutes. See *Trimmer v. Heagy*, 16 Pa. 484 and *Pettit v. Fretz's Extr.*, 33 Pa. 118.

That the Legislature did not intend to follow the common law strictly in Sections 1286 and 1287 is clear from other clauses as well as from the one now in question. For instance, under Section 1286 the husband's curtesy in his wife's lands was expressly made to continue only until the issue should attain majority, and not, as at common law, during the husband's life. *Cummins v. Wond*, 6 Haw. 69. Again, at common law he could alien her lands or the rents and profits thereof during coverture, but by this Section of the Code, he could not do so without her written consent. *Opunui v. Kauhi*, 8 Haw. 649. Again, by the same Section the husband was made liable for the ante-nuptial debts of his wife, without specifying however whether his liability was to continue only during coverture, as at common law, or after the death of his wife as well. In *Kaluahine v. Dole, Trustee*, 3 Haw. 374, this Court said, "We regard our statute as creating this liability, and to this extent in conflict with the common law." Thus, the Court has been disposed to follow the wording of the statute where the statute did not plainly appear to follow the common law, and this, too, in decisions in which the court recognized that the statute was for the most part a re-enactment of the common law.

From the foregoing reasoning, I could not very well construe "consent" to mean either "written consent" or "joinder." My reasons for this conclusion have been stated at greater length than might otherwise be necessary because the contrary is urged as having been held in certain former Hawaiian decisions, namely, *Cummins v. Wond*, 6 Haw. 69 and *Naweli v. Auld*, Ib. 397.

These were single-judge opinions and are therefore entitled to less weight than opinions of the full court. But they were both *obiter dicta* so far as they bear on the question now involved. In the first case the Judge decided merely that a wife could not convey her lands directly to her husband. In stating what the common law was as to conveyances with reference to husband and wife, the Judge after stating the incapacity of each to convey to the other, added "Neither can a wife convey her

own lands to a stranger, unless her husband joins in the conveyance. Our statute is a virtual re-enactment of the common law as applicable to marital rights. The wife in the language of the Code, is deemed, for all civil purposes, merged in her husband, and civilly dead." It is obvious that the Judge's attention was directed particularly to the first sentence of Section 1287 and its application to deeds directly between husband and wife and that there was no occasion and no attempt to decide upon the construction of the second sentence in this Section and its application to deeds to a stranger. As we have seen, the statute, while, as the Judge said, a "virtual re-enactment of the common law as applicable to marital rights" in most respects, is clearly not so in all respects, and "consent" even if it could be construed as "written consent" certainly could not be construed as "joins," the word used by the Judge. The second case was more like the present case in that it involved the question whether the wife's deed to a stranger was void. The Judge said it was void unless the husband consented by joining in its execution, and that his subsequent death did not remedy the defect. But there was no contention that the husband had orally consented. The Judge proceeded as if there were no consent whatever and the main question was whether for that reason the deed was absolutely void or only voidable.

It may be that if consent is required at all it would be good policy to require it not only to be in writing but also to appear upon the deed itself, but questions of policy are for the Legislature to decide. The Statute of Frauds does not apply to this case. Even if it would be applicable in so far as the husband's interest in his wife's lands might be concerned, if she were still living, it can have no application now that she is dead and the interest which he then had in her land has terminated. In my opinion the exceptions should be sustained and a new trial ordered.