## HONUAIWA KAOPUA *v.* KEMILIA HOLT AND GEORGE H. HOLT.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED MARCH 4, 1907.                    DECIDED MARCH 27, 1907.

FREAR, C.J., HARTWELL AND WILDER, JJ.

EQUITY—*bill for cancelation of deed obtained by fraud.*

Held that the testimony fails to show that the plaintiff was induced to execute the deed by fraud and deceit, or by misrepresentation of its contents.

OPINION OF THE COURT BY HARTWELL, J.

The plaintiff's bill was brought May 15, 1906, to obtain cancelation of a deed made by her ·March 3, 1906, by which, for the consideration of $1 and love and affection, she conveyed to her daughter Kemilia, one of the defendants, all of her right in all of the lands formerly belonging to her deceased husband J. W. R. Kaopua, and also the land at Lauka on the Island of Hawaii conveyed by her husband to Kahookano, trustee, and by him conveyed to the plaintiff by deeds of February 27, 1897.

The bill avers in substance that the plaintiff was induced by the daughter to leave her home in Waimea, Island of Hawaii, to visit in Honolulu and that while at the home of the daughter and the daughter's husband, the defendant George H. Holt, she was persuaded by the daughter to assign to her the dower in Kaopua's lands and afterwards was shown by the daughter an instrument in writing which she was led by the daughter to believe, and did believe, was an assignment of the dower right only and that under the daughter's assurance and in the belief that the deed conveyed nothing more than

the dower she, in consideration of love and affection for her daughter, was induced to execute and deliver the deed believing it to be an assignment of the deed and no more, but that the deed was also a conveyance of her land at Lauka in Hamakua, Hawaii; that the daughter, taking advantage of the plaintiff's incapacity, affection and confidence, caused the deed to be prepared inserting therein the land of Lauka, knowing that the plaintiff had not intended or agreed to convey it and was ignorant that the deed conveyed the land; that the defendants caused the deed to be prepared with the design of robbing, wronging and deceiving the plaintiff and succeeded in their design and that she did not know that the deed conveyed the Lauka land until her return to her home in Waimea.

The answer admits that the deed was prepared by the defendants and presented to the plaintiff for her signature but denies that either of the defendants led her to believe, or that she did believe, that it was only a relinquishment of dower, but avers that she clearly understood that it included the Lauka land as well; denies that either of the defendants took advantage of the plaintiff or that she did not intend to convey or was ignorant when she executed the deed that it conveyed the Lauka land; avers that the plaintiff's husband at the time of his death owed more than $1500, leaving no personal property and that all his real property, including the Lauka land, was under a mortgage held by the Honokaa Sugar Co.; that upon the advice of the administrator, Henry Smith, the defendant Holt paid the debts of the estate amounting to more than $1200 and discharged the mortgage claim, the mortgage still remaining a valid lien; that the defendants for more than a year had been investigating the title in the lands included in the mortgage "with the object of clearing them from the mortgage without foreclosing it" and for this purpose sent to Waimea for the plaintiff with the intent of securing from her a deed of her dower and of her interest in the Lauka land; that when the plaintiff was informed of the amounts expended to pay the debts she expressed her entire willingness

to deed to the daughter her rights in all the property covered
by the mortgage and thereupon the deed was prepared, its.
contents carefully explained to the plaintiff and she executed
the same of her own free will without undue influence on the
part of any person.

The lands mentioned in the plaintiff's deed were mortgaged
by her husband to secure his note for $1515 with 12 per cent.
interest by mortgage deed dated September 21, 1887, which
includes (1) the land at Papuaa and Namoku in Hamakua,
Island of Hawaii, containing 72 acres, R. P. 1774; (2) land
at Namoku containing 13 acres, R. P. 6515; (3) land at
Lauka in Hamakua containing 60 acres, R. P. 1885, except
the portion (30 acres) conveyed to J. G. Tucker; (4) land
at Hamakua containing 10¼ acres, R. P. 7010. At the date
of Kaopua's death the mortgage was held by the Honokaa
Sugar Co., the amount owing upon it when it was assigned
to Holt, January 9, 1901, being $669.26.

In *Kemilia Holt v. Kaaukai,* 11 Haw. 497 (1898), it was.
shown that the Papuaa and Namoku land descended to Kaopua
and his sister Maiau who conveyed it November 13, 1876, to
his daughters Kemilia and Rode and that Kemilia afterwards
bought her sister Rode's share in the land. Neither this
plaintiff nor Kaaukai, Maiau's husband, had joined in or in
writing consented to the deed. The court held that the deed
was therefore void as against Kaaukai's ½ interest in Maiau's
estate, being ¼ of the whole land. Upon the death of Maiau
in 1879 or 1880 her ½ descended ¼ to her husband and
¼ to her brother which, on his death in April, 1900, descended
to his six children. Kemilia, having bought Kaaukai's ¼,
now has ¾ by deed and 1-24 by descent from her father, the
other five children inheriting 5-24. The plaintiff's dower in
¾ of this land and Kaopua's inherited fee in ¼ are within the
mortgage.

The land is under a lease made by Kaopua October 13, 1890,
to the Honokaa Sugar Co. for the term of fifteen years from
November 15, 1892, ending November 16, 1907, at an annual

rental of $400. Kaopua collected the rent to November 16, 1900, if not for the following year. The administrator collected the rent from November 16, 1901, to November 16, 1902, and charged himself with three years' rent thereafter ($1200), with a memorandum that it was "advanced by Mrs. Kemilia Kaopua Holt, daughter of deceased, and husband (to whom the right to collect for these three years has been sold). This to prevent lands from being sold by foreclosure of mortgage." The $1600 thus received were used by the administrator in payment on account of the defendant Holt of the $669.26 balance of the mortgage which was assigned to Holt and of certain unsecured debts of Kaopua amounting, with expenses of administration and administrator's commissions and interest on the $1200 rent advanced, to $1600. Kaopua leased all of the Lauka land (the plaintiff's 30 acres and his own 10 ¼ acres) June 6, 1896, to the Honokaa Sugar Co. at $140 a year for a term of eleven years ending June 6, 1907. The rent has been paid to the plaintiff since her husband's death. She leased her land August 21, 1905, to the Honokaa Sugar Co. for twelve years from September 15, 1907, at $105 a year for the first ten years and $1 a year for the remaining two years taking in advance $420, the rent of four years, and no further rent is coming until September 15, 1911. The 10¼ acre piece was also mortgaged by Kaopua to the Honokaa Sugar Co. February 10, 1891, to secure his two years' note for $500 at ten per cent. interest. No part of this note, principal or interest, has been paid since May 16, 1899, and there was owing upon it March 3, 1906, the date of the deed to Mrs. Holt, $839.86.

It is agreed that $50 an acre is the salable value of these lands. At that valuation a sale on a foreclosure of the first mortgage, made while the plaintiff's land is thus under lease, would probably have but one bidder, namely, the lessee, while the 10¼ acres would be insufficient to satisfy the amount due on the second mortgage. The ¼ of the Papuaa and Namoku lands would not bring enough to pay the mortgage debt

($669.26) with interest at twelve per cent. from January 9, 1901, and expenses of foreclosure, made at any time after March 3, 1906. The debt would be larger November 16, 1907, when the lease on those lands ends. If the foreclosure were deferred until 1917, when the lease of the plaintiff's land ends, the mortgage debt would by that time amount to over $2000, and it is extremely problematical whether the plaintiff, if then living (she was born in 1846), would receive any benefit from her land. Under the circumstances she might well have been advised to convey her dower rights and Lauka land to her daughter, relying upon being allowed to continue to take the $35 a year rent on the $10\frac{1}{4}$ acres which were owned, 1-3 by Kemilia and 2-3 by the other children, subject to the plaintiff's dower, and expecting that Holt would not foreclose the first mortgage and thus that there would be a chance of keeping the land from going to the Honokaa Sugar Co.

The plaintiff came to Honolulu February 17 in response to a letter from her daughter, of which the following is a somewhat literal translation:

"Palama 6th, 1906. It is my desire to write you mother and all the children. Many days have passed and I have received no letter. I have written several letters but they have not been answered therefore I have had no thought (or have not known what to think). Besides I have had no time on account of so many children; there are many things to think of for the children, washing their clothes going to school and so on with the little folks truly is seen the great amount of trouble and pain. So we are living. On Saturday I was out at Maiau's place thinking that they two were going back this week but it seems not; they are however in good health. The baby is the one that is feverish but is better. Much love to you. This baby of ours is big and fat and is over five months. Love to brother (or Kaina). It is my great wish mother that you come here if you can on account of this matter of Kaaukai with us. It is not finished. * * * Great is the expense. You must not think that we two ourselves have used up the money of this land. It is about nine years since this land was adjudicated to now. The lawyers say that all the land of Kaopua is mortgaged and that the deed conveying the

40 acre piece to you is of no avail. By the law if papa had debts the land will be sold at auction and the balance I want you to come and settle so that the difficulties may be ended. I do not desire that there should be too much talk. We two have had much trouble. Geo. has sold all of his interest in Halemano for $6000 and has paid all of his little troubles off. Enough. Do not forget to answer. Kemilia Holt."

The daughter, called by the plaintiff, testified that her mother was three weeks at the house before she signed the deed; that she told her mother that the Lauka land "was under mortgage under the name of my husband," and that "the best thing she could do, if it pleased her and she had no objections," was to "deed the property over to me" and she consented without further doubt; that she said to her, "This land is under mortgage but if it was to be sold you would get left; better to have it sold to me rather than to sell it to an outsider." When asked to repeat her language she said that she told her mother that "This land was under debt and if she wanted to be kind to me and to still have the benefit of it, just deed the land over to me because my husband * * * paid the debt of this mortgage on the land of Lauka;" that she mentioned the land of Lauka and no other land and that her mother agreed to convey merely that land; that she never asked her mother to deed to her the other lands of Kaopua but "asked her if she had any interest in any other property outside of this, if she was willing to deed her life interest to me." In answer to the court she added that she told her that her husband had paid more than the mortgage; that Mr. Thayer, at her husband's request, prepared the deed and brought it to her home when she called her mother to sign it; that before her mother signed "the deed was first read and explained to her by George Holt;" that Mr. Thayer, who did not talk Hawaiian, first read it in English then the husband explained it in Hawaiian and "mentioned first about the land of Lauka" and the mother signed, asking no questions; that her husband asked the mother, "Do you consent to sell, transfer and convey this land that you got from Kaopua to Hookano and from Hookano to you, freely

to me, and she said 'yes;' " of these words she had a distinct remembrance; that previous to signing the deed she was the only one that had any conversation with the mother about it; did not speak to her the first day she came or the first week; when she first mentioned it the mother said, "Well, what have I got to do with it?" and "You go on and do what you think is right;" that after her mother came she told her that the Lauka deed was no good.

The plaintiff testified that she came to Honolulu with the impression that she came to see about some land that they had a dispute with Kaaukai about; that March 3 her daughter called her saying that she wanted her to sign a paper; that she went and noticed Mr. Thayer and the daughter's husband; the daughter called for ink and said, "You sign it here, sign that in full;" that the contents of the instrument were not explained or read to her; that when she returned to Waimea a daughter's husband told her what the newspaper showed that she had signed; after she got home her sister came over and told her brother "mama's land has been sold to Kemilia. I didn't believe it then, but they told me that the newspaper said that I had sold it and I decided to go up and ask Sam Spencer who told me that was the report in the paper. He asked me why I deeded the property to my daughter and her husband, saying, 'They are quite well off, and you had better write to them and ask them about it.' I said, 'I think they are angry with me and don't think I ought to write,' and that the whole thing ought to be left in the lawyer's hands." The plaintiff and her two sisters owned a small piece (65-100 of an acre) of land on Hawaii, besides a homestead at Waimea of about 16 acres on which they raised bananas and sugar cane. She had two daughters and one son married. Two unmarried daughters live with her. She further testified that at Kemilia's house no suggestion was made to her that the Lauka lands were intended to be conveyed but all the talk was with reference to the other land.

The defendants' attorney, Mr. Thayer, testified that they did not want to foreclose the mortgage "which had been assigned to Holt because then the plantation would have an opportunity to buy and the heirs would get nothing," and so they decided to send for the plaintiff and explain to her what had been done by the daughter and son-in-law in paying off the debts, secured and unsecured, and suggest to her that it would be a very good idea "for her to transfer this property to them to save the foreclosure," and that the letter was written to the plaintiff at the request of the attorney; that he prepared the deed at the request of the defendant Holt and took it to Holt's house where he found the plaintiff, having the deed in his hand which he read in part. "I do know positively that I read the parts describing in brief the lands. One part, as I remember it, says, 'all of the right, title and interest in and to the lands of J. W. R. Kaopua, deceased,' and the other, so far as it said the lands of Lauka, the lands of Lauka, Hamakua, I don't remember exactly the wording, but I wanted to be sure that she understood what she was doing. George Holt interpreted for me. * * * I think he interpreted as I went along but I could not swear to that. * * * I then said to her, This is a deed from yourself to your daughter. You are giving to your daughter your interest in Papuaa and the interest in Lauka at Hamakua,' and then George Holt interpreted that and I said, 'Are you willing that your daughter should have these lands?' * * *. She said something in Hawaiian, the only word of which I recognized was the word 'mahi ko' which I knew to mean a plantation, so I asked George Holt what she said and he replied, 'I had rather have my daughter have it than it should go to the plantation.' I used the notorial expression, 'Do you do this of your own free will and for the uses and purposes therein set forth?' and she said 'Ae.'"

The defendant Holt testified that the formal parts of the deed were read by Thayer which he interpreted to the plaintiff; that he never looked at the deed himself, taking Mr.

Thayer's reading of it, who "said that (asked) if she is going to convey her right, dower right in Kaopua's estate and the land of Lauka, and she said, 'yes.' I translated in Hawaiian."

Some of the details concerning the leases and mortgages and the debts owing upon them, which are above recited, have been obtained from counsel and were not before the judge who, upon the facts before him, decreed a reconveyance of the plaintiff's Lauka land to be made to her by the defendants, from which decree the defendants appealed.

Upon the showing thus made of the condition of the estate there was no occasion for the defendants to practice any deceit upon the plaintiff to induce her to execute the deed and in view of all the testimony we cannot say that any deceit was practiced. We are inclined to think that the daughter, while perhaps not mentioning the Lauka land specifically in her conversation with her mother about the property, did ask her mother to convey her interests in the mortgaged lands. Her letter to her mother referred to the mortgage which included those lands and it is extremely likely that the conversation between the mother and daughter would have been directed to all of them without particularizing the plaintiff's Lauka land.

The decree appealed from is reversed and the bill is dismissed.

*W. A. Kinney (Kinney, McClanahan & Derby* and *W. S. Edings* on the brief) for plaintiff.

*W. W. Thayer (Judd, Mott-Smith & Hemenway* also on the brief) for defendants.